**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 10, 2013

BY ECF

The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square, Room 2202
New York, New York  10007

> Re:   United States v. William Barbalat,
>       13 Cr. 268 (JMF)

Dear Judge Furman:

        The Government respectfully writes in advance of the defendant's sentencing, currently scheduled for Monday, December 16, 2013 at 3:30 p.m., and in response to the defendant's sentencing submission, dated December 2, 2013. ("Def. Mem.")

I.      The Offense Conduct

        The defendant promoted and operated a high-stakes illegal poker room in and around New York City.  (PSR ¶ 85.)  The defendant had two apartments (the "Apartments") in a doorman building in Manhattan where he and his co-defendant Arthur Azen operated their poker games.  The defendant employed other people to assist him in managing and running the gambling operation, including waitresses, massage girls, security personnel, and dealers.  The defendant took a "rake," which is a percentage of each pot throughout the game, in order to collect funds in order to pay for the poker games and make a profit.  The poker games operated by the defendant resulted in gambling debts as high as hundreds of thousands of dollars.  (PSR ¶ 85.)

        In connection with running his poker games, the defendant rented space in the Apartments for poker games and recruited players to attend his games, and he would gain a percentage of the winnings of players whom he had recruited.  For example, during a February 13, 2012 text message from the defendant to co-defendant Eugene Trincher, the defendant stated: "Ok.  I hear he is doing 5-10…by the way I have a perfect spot for his 5-10.  It's in my building and I can help with few players as well."

        In addition to renting space and recruiting players to attend games, the defendant financially backed games and split the profits with others.  For example, during a call that was intercepted on February 15, 2012, the defendant asked Eugene Trincher "would you consider going 50/50 on that game?"  The defendant was proposing both he and Trincher backing a game

and splitting the profits 50/50.  When Trincher declined to do so, they discussed which nights to host their games, which times to play, and whether Trincher wanted to use the defendant's apartment to host Trincher's game.  The defendant and Trincher then discussed joining games and players, and splitting the profits from their winnings, including the following exchange:

> *Barbalat:*  But if you, Mike and emil come, we will give you guys a split if you try to have a game, and you don't have a game, if you want to go play somewhere, you know what I mean.  You can bring Mike and Emil or whatever, I really don't care and we have a decent game and that's it.  And I give you 30%.  If you bring more I will give you more and that's it, that's a side deal.  Between me and you, nobody else.

> *Trincher:*  Alright let me talk to Eddie about Steve.

The defendant sent Trincher the following text messages later that day in which the defendant offered to split profits with Trincher and discussed dealing with gambling debts:

> *Barbalat:*  Ok.  Can u send mike red and Emil and ill give u some rake back.

> *Barbalat:*  They want cash.  I don't have cash.  I want to wash it with Wally because he owes me over 20.

> *Barbalat:*  And they don't want to wash because they broke and want to get any money thy can

On October 5, 2012, the New York City Police Department ("NYPD") received a call from a pay phone stating that someone was robbed for $30,000 at gun point at an apartment, which was later identified as one of the Apartments used by the defendant in his poker games.  When NYPD raided the apartment, they found 27 people in the apartment playing poker with three dealers at the game and, among other things, two bags of marijuana.  The three dealers at that poker game were arrested.

## II.   The Plea and Applicable Guidelines Range

On August 14, 2013, the defendant pled guilty, pursuant to a plea agreement, to a Count Twenty-Five of the Indictment, which charged him with interstate travel in aid of unlawful activity.  In connection with the plea, the defendant also agreed to a forfeit $150,000.

In its December 5, 2013 Report to the Court, the Probation Department calculated a Guidelines range of six to twelve months' imprisonment.  The Government agrees with this Guidelines calculation, which is consistent with the calculation set forth in the plea agreement.

## III.   A Guidelines Sentence is Appropriate

Under the factors set forth in 18 U.S.C. § 3553(a), the Government respectfully submits that a sentence within the Guidelines range is appropriate.

First, the nature and circumstances of the offense warrant such a sentence.  The defendant operated his own illegal poker games.  The defendant expanded his business to host games in two Apartments in Manhattan and to rent space in those Apartments to others hosting poker games.  The defendant enlisted various employees to assist him in operating the poker games.  The defendant profited from his business by receiving a percentage of each pot and earning a share of the winnings of players he recruited.  Contrary to the defendant's claim that his conduct occurred over a "relatively short period of time," (Def. Mem. 10), the defendant's conduct extended over the course of two years.

The defendant argues that the nature of the offense that underlies the defendant's Travel Act conviction – running poker games in his apartment - would have resulted in a misdemeanor charge under New York state law.  (Def. Mem. 9-10.)  The defendant's gambling activities took on an interstate character, and thus, properly amount to a federal felony Travel Act violation.  Congress' power to proscribe conduct carries with it the power to impose appropriate penalties without attempting to match them to varying state punishments for similar conduct.

Second, the defendant argues that there is no need for the sentence to afford deterrence for the defendant's criminal conduct because he claims that he left the conspiracy six months before the defendant was arrested, which would be November 2012.  (Def. Mem. 4, 10, 12.)  The defendant cites various reasons for his decision to quit the business – a falling out with Azen, the stress of managing games and apartments, the desire to change his lifestyle, and the arrival of his first child.  (Def. Mem. 10.)  Oddly, the defendant makes no mention of the fact that a poker game at one of his Apartments was raided by NYPD on October 5, 2012, and that three of the dealers were arrested.  The defendant's alleged discontinuation of his involvement in gambling immediately after the raid reveals nothing more than his desire not to get arrested as well.  Accordingly, the need to afford adequate deterrence to the defendant and public at large also warrants a Guidelines sentence.

Third, the history and characteristics of the defendant warrant a Guidelines sentence.  Despite the defendant's solid family upbringing and education at Rutgers, he entered the illegal work of gambling.  The fact that the defendant lost his job is no excuse for his criminal conduct.  (Def. Mem. 10.)  While the defendant has been on pretrial supervision, he tested positive for the use of cocaine in July 2013 and marijuana in October 2013, the latter of which occurred after he pled guilty in this case.[1]  (PSR ¶¶ 120-122.)  The defendant's drug use underscores the need for a sentence with appropriate supervision and drug testing and treatment.

Finally, the defendant's argument that there is no need for further punishment because he has suffered from press coverage of this case is meritless.  (Def. Mem. 12.)  The Government strongly disputes the accusation that there was anything inaccurate in its press release, which was based on public documents.  The fact that the defendant has a felony conviction that may affect the defendant's future employment prospects is not by itself any

---

[1] The defendant also tested positive for the use of amphetamines, but presented a prescription for Adderall, an amphetamine, to his pretrial services officer.  (Id.)

punishment; such is the case with any convicted felon.  Moreover, the defendant's claim that press coverage "will severely handicap his job prospects with future employers" is belied by the defendant's claim that he is currently employed as a sales representative, and that he was recently offered a management position in boutique hotel in Mexico.  (Def. Mem. 13.)  Thus, a Guidelines sentence is necessary to provide for just punishment and to promote respect for the law.

Accordingly, the Government respectfully submits that a sentence within the Guidelines is appropriate.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:  _____/s/_____
Kristy J. Greenberg
Harris M. Fischman
Joshua A. Naftalis
Assistant United States Attorneys
(212) 637-2469 / 2305 / 2310

cc:    Silvia L. Serpe, Esq. (by ECF)